IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Shirley Mann, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:05-791-HMH-BHH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report of United States Magistrate Judge Bruce H. Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1]  Shirley Mann ("Mann") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for widow's disability insurance benefits ("WDIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively.  In her Report, Magistrate Judge Hendricks recommends affirming the Commissioner's decision.  For the reasons stated below, the court declines to adopt the Magistrate Judge's Report and recommendation, vacates the Commissioner's decision to deny Mann benefits, and remands this case to the administrative law judge ("ALJ") for further proceedings.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1) (West Supp. 2006).

1

## I. Factual and Procedural Background

The facts are fully set forth in the decision of the ALJ, (R. at 15-26), and summarized as follows. At the time of the hearing before the ALJ, Mann was a sixty-one-year-old woman with a high school education. (Id. at 16.) She has attended beauty school and has completed some college courses. (Id.) Her past employment includes working as a hairstylist. (Id.) She alleges disability due to osteoarthritis, osteoporosis, fibromyalgia, uncontrolled hypertension, migraine headaches, fluid retention, high cholesterol, nerves, depression, inability to sleep, and asthma. (Id. at 16, 18.)

On July 31, 2000, Mann filed an application for Disability Income Benefits and SSI. Those claims were denied initially on December 12, 2000, and Mann did not appeal. (Id. 15.) On October 9, 2001, Mann filed the instant application for SSI. She filed the instant application for WDIB on April 30, 2002. (Id. at 15.) The applications were denied initially and on reconsideration. On February 24, 2004, after a hearing on July 18, 2003, the ALJ found that Mann was not disabled and entitled to neither WDIB nor SSI benefits. (R. at 25-26.) On January 12, 2005, the Appeals Council denied Mann's request for review. (Id. at 6.) Mann filed the instant action on March 15, 2005.

## II. The Magistrate Judge's Report

In her brief to the Magistrate Judge, Mann argued that (1) the ALJ failed to evaluate Mann's residual functional capacity as required by Social Security Ruling ("SSR") 96-8p; (2) the ALJ failed to perform the analysis of the treating and evaluating physicians required by 20 C.F.R. § 404.1527(d)(1)-(6), SSR 96-2p, and SSR 96-5p; and (3) the ALJ failed to correctly assess Mann's credibility.

The Magistrate Judge found that the ALJ's decision was supported by substantial evidence and that Mann had failed to show that the ALJ had erred. Accordingly, the Magistrate Judge recommends affirming the Commissioner's decision to deny Mann benefits.

### III. DISCUSSION OF THE LAW

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it. See id. However, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

#### B. Objections

Objections to the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report of the Magistrate Judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

The Commissioner filed no objections to the Magistrate Judge's Report. However, Mann filed objections on June 20, 2006. The Commissioner responded to Mann's objections on July 19, 2006.

Mann lodges two specific objections, essentially re-raising arguments made in her brief to the Magistrate Judge. Mann first contends that "[t]he Magistrate failed to specifically evaluate the Plaintiff's argument regarding the ALJ's failure to properly consider the opinions and assessments of the treating and evaluating physicians." (Objections 1.) Second, Mann argues that neither the Magistrate Judge nor the ALJ gave a valid reason for discounting the opinions of Dr. John C. Baker ("Dr. Baker") and Dr. Oregon Hunter ("Dr. Hunter").

After reviewing x-rays, Dr. Baker diagnosed Mann with multiple level degenerative disc disease, arthritis, and severe osteoporosis. (R. at 151.) Dr. Baker further noted that Mann's osteoporosis and degenerative disc disease were "symptomatically aggravated" by Mann's slip and fall on September 1, 1997, and that the accident was "the major contributing cause of her current symptoms." (Id.) In conclusion, Dr. Baker found that Mann is partially and permanently impaired due to the aggravation of her multiple-level disc disease in her cervical, thoracic, and lumbar spine, and she "meets the Social Security criteria for permanent total disability." (Id. at 152.)

Unlike Dr. Baker, who evaluated Mann on only one occasion, Dr. Hunter saw Mann multiple times between January 21, 1998, and May 27, 1998. Dr. Hunter diagnosed Mann with a fractured left radius, chronic pain syndrome, cervicothoracic and lumbar pain, and left upper extremity and bilateral lower extremity pain. (Id. at 150, 160, 162, 163, 167.) On January 21, 1998, Dr. Hunter released Mann to work, but limited her work capacity, stating that Mann "must

be able to make position changes as needed," that she could only lift or carry one to ten pounds frequently, that she cannot use her left hand for "repetitive action" such as grasping, fine manipulation, pushing and pulling, or reaching, and that she cannot stoop or bend. (Id. at 168.) Two months later, on March 24, 1998, Dr. Hunter reiterated that Mann could work within "her restrictions," and did not update the restrictions given on January 21, 1998. (Id. at 160.) On his final consultation with Mann on May 27, 1998, Dr. Hunter noted that the left radius fracture was well-healed, but that Mann continued to suffer chronic wrist pain, pain "in the remainder of the body," multiple areas of tenderness in her back, and intermittent crepitations from movement of her left wrist. (R. at 158.) Dr. Hunter did not revise the restrictions placed on Mann's work capacity.

The ALJ found that Mann's lower back pain and the residual effects of her left wrist fracture were severe. (Id. at 17.) The ALJ considered those impairments and Mann's other impairments, which the ALJ found to be non-severe, and concluded that Mann "retains the residual functional capacity to perform work with restrictions that require no lifting or carrying over 25 pounds frequently, 50 pounds occasionally; limited stooping, crouching, and climbing of ladders or scaffolds; and no constant gripping or grasping of the left, non-dominant hand." (Id. at 23-24.)

The ALJ explained why he gave little weight to the opinions of Dr. Baker and Dr. Hunter in determining Mann's residual functional capacity ("RFC"). The ALJ weighed Dr. Baker's opinion lightly because (1) Dr. Baker had only examined Mann on one occasion; (2) Dr. Baker opined that Mann was disabled, a determination reserved for the Commissioner; and

5

(3) the ALJ concluded that "the clinical findings are contradictory to such a severe statement" that Mann is disabled. (Id. at 24.) Though not in section of the opinion in which the ALJ explained Mann's RFC, in outlining the medical evidence in the record, the ALJ noted that Dr. Baker's opinion "contain[ed] no x-rays or other diagnostic evidence confirming" his diagnosis, suggesting that Dr. Baker's opinion was entitled to less weight for that reason. (Id. at 21.)

The ALJ similarly discounted Dr. Hunter's opinion concerning Mann's limitations. The ALJ noted that Dr. Hunter's limitations of Mann's work capacity "were provided shortly after the claimant's work-related injury and are not reflective of the claimant's capability at maximum medical improvement." (Id. at 24.) Second, the ALJ found that Dr. Hunter's opinion was not entitled to the weight typically accorded under the "treating physician rule" because he "saw the claimant on only three occasions." (Id.) Accordingly, the ALJ credited Dr. Hunter's opinion only to the extent that it supported the residual functional capacity the ALJ determined from consideration of the entire record.

Magistrate Judge Hendricks found that substantial evidence supported the ALJ's determination to discount Dr. Baker's and Dr. Hunter's opinions. Magistrate Judge Hendricks noted that the ALJ's decision to discount Dr. Baker's opinion was supported by two of the reasons that the ALJ had given for doing so, that Dr. Baker only examined Mann on one occasion and that Dr. Baker opined that Mann was disabled. (Report 12.) Concerning Dr. Hunter, Magistrate Judge Hendricks again cited the reasoning given by the ALJ with approval, that Dr. Hunter's opinion concerning Mann's residual functional capacity ("RFC") was made "only seven months after her accident and before she had reached maximum medical improvement." (Id. 13.) Moreover, the Magistrate Judge considered Dr. Hunter's limitations

of Mann's functions unsubstantiated and contradicted by the record and concluded that Dr. Hunter's notes were inconsistent. (Id.) Finally, the Magistrate Judge reviewed other evidence in the record and concluded that the record, as a whole, supported the ALJ's decision to give Dr. Baker and Dr. Hunter's opinions little weight.

Mann argues that the Magistrate Judge erred because the reasons given by the ALJ for discrediting Dr. Baker and Dr. Hunter's opinions are invalid. The court agrees. First, with respect to Dr. Baker, Mann argues that the ALJ may not discredit Dr. Baker's opinion because he examined Mann on only one occasion. Although the regulations require the ALJ to consider the length of the relationship between the doctor and the patient in weighing the significance of the opinion, that Dr. Baker examined Mann only once is not a valid reason to ignore Dr. Baker's opinion entirely. See Hines v. Barnhart, No. 05-1299, 2006 WL 1892178, at *3 (4th Cir. July 11, 2006) (giving a non-exclusive list of factors to be considered by the ALJ in weighing medical opinions). In fact, Dr. Baker's examination of Mann is a factor that weighs in favor of giving Dr. Baker's opinion more deference. 20 C.F.R. § 416.927(d)(1) (2006) ("Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

The ALJ also may not discount Dr. Baker's opinion because he opined that Mann met the requirements for disability under the Social Security Act. Though Dr. Baker's opinion on this issue is not controlling, the regulations require the ALJ to consider Dr. Baker's opinion and, more importantly, the medical basis behind the doctor's opinion, in rendering a decision with respect to the claimant's disability. See 20 C.F.R. § 416.927(e)(1) (2006).

Finally, the ALJ asserted that the clinical findings do not support Dr. Baker's statement that Mann is disabled and that Dr. Baker had not supported his opinion with x-rays or other diagnostic evidence confirming his opinion. However, Dr. Baker, in his report, stated that he had reviewed x-rays in making the diagnosis, and other diagnostic reports from x-rays support Dr. Baker's diagnosis. (R. at 151, 204-06, 220.) Further, the ALJ did not explain which clinical findings discredited Dr. Baker's opinion. See SSR 96-8p, 1996 WL 374184, at *7 (1996) (noting that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings)" and that the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). As such, the court finds that the ALJ failed to provide a valid basis and a sufficient explanation for discrediting Dr. Baker's opinion.

The ALJ similarly failed to provide a valid basis and sufficient explanation for discrediting Dr. Hunter's opinion. As noted above, the ALJ discredited Dr. Hunter's opinion because it was made shortly after the accident and because Dr. Hunter saw Mann "on only three occasions, which does not meet the expectations of the 'treating physician rule' under the spirit of the law . . . ." (R. at 24.) Under the treating physician rule, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). As an initial matter, the Social Security Administration considered Dr. Hunter to be Mann's treating physician and requested that Dr. Hunter conduct a consultative evaluation of Mann. (R. at 155.) In fact, the ALJ also considered Dr. Hunter to be a treating

physician. (Id. at 24.) However, the ALJ erred in concluding that Dr. Hunter saw Mann only three times; the record shows that Mann saw Dr. Hunter on five separate occasions. (Id. at 150, 160, 162, 163, 167.)) Finally, the fact that Dr. Hunter conducted Mann's evaluation shortly after Mann's injury does not necessarily discredit the limitations he placed on Mann's work. Dr. Hunter affirmed the limitations he placed on Mann even after her wrist was well-healed, and he never lifted or amended the restrictions. Dr. Baker later opined that Mann could not work, and Mann's testimony at the hearing confirmed Dr. Hunter's limitations on her ability to work. (Id. at 42-46.) In sum, the court concludes that a remand is necessary to allow the ALJ to reconsider the opinions of Drs. Baker and Hunter.

Mann's second objection is that the ALJ failed to properly evaluate Mann's RFC. (Objections 7-9.) The Magistrate Judge noted that Mann raised three arguments in her brief: (1) the ALJ failed to explain how he arrived at Mann's RFC; (2) the ALJ failed to conduct a function-by-function assessment as required by the regulations before declaring Mann's RFC; and (3) the ALJ failed to consider all of Mann's impairments in making the RFC determination. The Magistrate Judge found that while the ALJ's RFC determination was not "overly specific," the ALJ discussed all of the evidence in the body of the opinion, including Mann's physical limitations, and did not err in his RFC determination. (Report 15.)

Mann raises the same arguments in her objections that she raised before the Magistrate Judge, and the court concludes that the ALJ erred in determining Mann's RFC. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. Under the regulations, the ALJ must conduct a function-by-function analysis to determine Mann's

ability to perform her past work.  Id.  The ALJ did not conduct a complete function-by-function analysis in ascertaining Mann's RFC.  In particular, the ALJ's opinion contains no analysis or finding concerning Mann's capacity to stand and walk.

The regulations require that after conducting a function-by-function analysis, in determining the RFC the ALJ must determine "whether the individual can do past relevant work as he or she actually performed it."  Id.  SSR 96-8p further explains that "[i]t is very important to consider first whether the individual can still do past relevant work as he or she actually performed it."  Id.  Only "[w]hen it is found that the individual cannot do past relevant work as he or she actually performed it" must the ALJ "consider whether the individual can do the work as it is generally performed in the national economy."  Id. at *4.  Nonetheless, in this case, the ALJ did not consider whether Mann could perform the functions required to be a hairstylist as she performed it, but proceeded to find that Mann "could return to her past relevant work as [a] hair stylist as generally performed in the economy."  (R. at 25.)

Had the ALJ followed the regulations, he would have seen that Mann's limitations–as found by the state agency physicians and the ALJ–prevent Mann from doing the job of hairstylist as she actually performed it.  Mann described her hairstylist job as requiring eight to ten hours standing, "very little" sitting, eight to ten hours stooping, kneeling, and crouching, and ten hours of writing, typing or handling small objects.  (Id. at 120-22.)  The ALJ made no finding with respect to whether Mann overstated the demands of the job of hairstylist.

The agency physicians, Dr. Robert D. Kukla ("Dr. Kukla") and Dr. Charles Jones ("Dr. Jones"), both limited Mann to six hours of standing in an eight hour workday, and Dr. Jones also limited her stooping and crouching and handling objects with her left hand.  (Id. at 239,

10

248-50.) The ALJ found some limitations to Mann's ability to work, including how much she can lift or carry, and determined that she may perform limited stooping, crouching, and no constant gripping or grasping with her left hand. (Id. at 23-24.) Accordingly, the amount of standing, stooping, and crouching Mann performed in her work appears inconsistent with the current limitations on Mann's ability to work.

Moreover, the ALJ's reliance on how the job of hairstylist is performed in the national economy does not justify the ALJ's conclusion that Mann can perform her past relevant work. The ALJ relied on the strength demands set forth in the Dictionary of Occupational Titles ("DOT") to conclude that Mann could work as a hairstylist. (R. at 24-25.) However, the DOT description for "Hair Stylist" omits any description of the physical demand of standing and walking, which is of particular concern for Mann. See Dep't of Labor, DOT Code 332.271-018 (4th ed. 1991). The ALJ is required to evaluate whether Mann can perform a job as a hairstylist for "*8 hours a day*, for five days a week, or an equivalent work schedule." Hines, 2006 WL at *3. Mann testified at the hearing that standing longer than 15 minutes causes her back pain, and she needs to alternate between standing and sitting. (Id. 46-46.) Her testimony is consistent with Dr. Hunter's limitations on her activities, and there is abundant objective medical evidence in the record that Mann suffers from conditions which can cause her back pain. Even the state agency physicians limited Mann's standing to six hours per day. (Id. at 239, 248-50.) The DOT section concerning the hairstylist position does not address how many hours a hairstylist must stand in a work day. See DOT Code 332.271-018.

For all of the reasons above, the court finds that the ALJ failed to follow the regulations in determining Mann's RFC. The record is ambiguous as to whether Mann can perform her past

11

relevant work. Accordingly, the court declines to adopt Magistrate Judge Hendricks' Report and recommendation, vacates the Commissioner's decision to deny Mann benefits, and remands the case to the ALJ for further proceedings.

It is therefore

**ORDERED** that the Commissioner's decision to deny Mann benefits is vacated, and the case is remanded to the ALJ for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
July 25, 2006